# United States District Court
# Central District of California

| | |
|---|---|
| DEANCO HEALTHCARE, LLC, doing business as MISSION COMMUNITY HOSPITAL, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as the Attorney General for the State of California; the OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF CALIFORNIA; and the STATE OF CALIFORNIA,<br><br>Defendants. | Case No. 2:18-cv-03934-ODW (PJW)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND [24]** |

## I. INTRODUCTION

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint for lack of jurisdiction and failure to state a claim. (Mot. to Dismiss, ECF No. 24.) For the following reasons, the Court **GRANTS** Defendant's motion to dismiss without leave to amend.[1] (ECF No. 24.)

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. BACKGROUND

In September 2010, the Office of the Attorney General for the State of California ("OAG"), as part of its responsibility for regulating charitable entities, approved Plaintiff Deanco Healthcare, LLC's attempt to purchase Mission Community Hospital from a nonprofit organization. (Compl. ¶ 30, ECF No. 1.) As a condition of the approval, the OAG required Plaintiff to provide a minimum amount of charity care to indigent and uninsured individuals, or to provide financial support to nonprofit organizations in Plaintiff's area that do (hereinafter, the "Charity Care Condition"). (*Id.* ¶¶ 33–34.) In July 2013, when the purchase "closed," Plaintiff confirmed its commitment to comply with the conditions of purchase for the next six years. (*Id.* ¶ 31.)

Plaintiff now claims that, as a result of the Patient Protection and Affordable Care Act ("Affordable Care Act") and the Health Care and Education Reconciliation Act of 2010, from 2013 to 2017, the number of uninsured individuals in California dropped from 17.2% to 7.2%. (Opp'n to Mot. to Dismiss ("Opp'n) 1, ECF No. 25.) Plaintiff complains that instead of enjoying the success of the Affordable Care Act, it "has been punished by every individual since 2010 who has procured health insurance." (Compl. ¶ 10.) As a result of more individuals having insurance, the demand for charity care at Plaintiff's hospital decreased, resulting in Plaintiff's alleged inability to comply with the Charity Care Condition. (*See* Opp'n 2.)

In 2016, Plaintiff requested that Defendants modify the threshold for the Charity Care Condition due to the impact of the Affordable Care Act. (Compl. ¶ 46.) In response, Defendants commissioned a third-party consultant to conduct a study of the charity care needs in Plaintiff's hospital's community, and, on March 9, 2018, held a public hearing on Plaintiff's request. (*Id.* ¶¶ 58, 59.) Following the study and public hearing, on April 13, 2018, Defendants denied Plaintiff's request. (*Id.* ¶ 60.)

On May 10, 2018, Plaintiff filed the instant suit seeking to invalidate the Charity Care Condition on the basis that it is preempted by federal law. (*See* Compl.)

Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### III.    LEGAL STANDARD

A.    **RULE 12(b)(1)**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional . . . ." *Sun Valley Gasoline, Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir. 1983). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). A facial attack is based on the challenger's assertion that allegations in the complaint are "insufficient on their face to invoke federal jurisdiction." *Id*. A factual attack disputes the validity of allegations that, if true, would invoke federal jurisdiction. *Id.* In resolving a factual attack, the court "need not presume the truthfulness of the plaintiffs' allegations." *White*, 227 F.3d at 1242. Once a defendant moves to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing the court's subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

B.    **RULE 12(b)(6)**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV. DISCUSSION

Defendants move to dismiss Plaintiff's Complaint on two bases: (1) Defendants the OAG and State of California are immune from suit under the Eleventh Amendment and are not "persons" subject to liability under 42 U.S.C. § 1983; and (2) Plaintiff's preemption claims must be dismissed for failure to state a claim. (Mot. 1–2.)

### A. ELEVENTH AMENDMENT IMMUNITY

Defendants the OAG and State of California move to dismiss under Rule 12(b)(1) on the basis that they are immune from suit pursuant to the Eleventh Amendment.

The Eleventh Amendment immunizes states, an arm of the state, its instrumentalities, or its agencies from suits brought in federal courts. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995). There are three exceptions to this rule: (1) "Congress may abrogate that immunity pursuant to its lawmaking powers"; (2) "a state may waive its Eleventh Amendment immunity by consenting to suit"; and (3) "immunity does not apply when the plaintiff" sues a state official in his or her official capacity for prospective injunctive relief. *Steshenko v. Gayrard*, 70 F. Supp. 3d 979, 988–89

(N.D. Cal. 2014); *see Ex Parte Young*, 209 U.S. 123, 166 (1908); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). Moreover, the Eleventh Amendment limits claims brought under § 1983. *Lawrence Livermore Nat'l Lab.*, 131 F.3d at 839.

Here, Plaintiff does not dispute that the State of California is immune from suit pursuant to the Eleventh Amendment. Rather, Plaintiff requests that the dismissal be without prejudice.[2] However, it is evident that the State of California is immune from suit, and Plaintiff provides no reason why the dismissal should be without prejudice. Accordingly, the State of California is dismissed from this lawsuit with prejudice.

As to Defendant the OAG, Plaintiff argues that it should be stripped of its immunity because it operates independently from the state. (Opp'n 5.) Plaintiff identifies three factors that the Court should consider before stripping immunity from state agencies: "(1) whether the agency performs 'essentially governmental' functions, (2) whether the agency has the right to sue on its own behalf and (3) whether the agency has power to take and hold property in its own name." (*Id.*) Plaintiff has not met its burden. Plaintiff's Complaint contains no facts in support of any of these factors that would warrant stripping the OAG of its immunity. Additionally, Plaintiff provides no authority where a court has stripped the OAG of its immunity. The OAG is undoubtedly an arm of the state. "The Eleventh Amendment protects the State from the *risk* of adverse judgments . . . ." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997) (emphasis added).[3] Accordingly, Defendants the OAG and State of

---

[2] Plaintiff likewise does not oppose Defendants' request to dismiss the eighth and ninth claims for relief, which allege state law causes of action pursuant to California Code of Civil Procedure sections 1085 and 1094.5. *See Pennhurst*, 465 U.S. at 124–25 (holding that federal courts lack jurisdiction to enjoin "state institution and state officials on the basis of" state law). Accordingly, the eighth and ninth claims are **DISMISSED without leave to amend**. *See Qureshi v. Countrywide Home Loans, Inc.*, Case No. 09-4198 SBA, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (finding that a failure to oppose results in an abandonment of those claims).

[3] This does not prohibit a lawsuit against the Attorney General. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (finding that the Attorney General may be subject to suit under *Ex Parte Young*).

5

California are entitled to immunity under the Eleventh Amendment and are dismissed from this lawsuit with prejudice.

**B.     PREEMPTION**

There are three classes of preemption: express preemption, conflict preemption, and field preemption. Pursuant to the Supremacy Clause, U.S. Const. art. VI, cl. 2, federal law preempts state law when "(1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010).

Plaintiff claims that the Charity Care Condition is invalid under two theories: (1) field preemption based on the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, which prevents hospitals from refusing to provide emergency medical treatment or transferring patients before their conditions are stabilized; and (2) conflict preemption as to five federal laws.[4] (*See* Compl. ¶¶ 66, 70, 75, 79, 84, 85.) Accordingly, the Court addresses whether Plaintiff's Complaint sufficiently alleges a claim for field and conflict preemption.

**1.     FIELD PREEMPTION**

EMTALA regulates hospitals with an emergency department. 42 U.S.C. § 1395dd(a). Specifically, when an individual "comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department." *Id.* EMTALA also prohibits hospitals from transferring individuals with an emergency medical condition prior to the individual being stabilized. *Id.* § 1395dd(c).

---

[4] (1) EMTALA, 42 U.S.C. § 1395dd; (2) Medicaid Expansion, 42 U.S.C. § 1396a(74); (3) the individual mandate of the ACA, 26 U.S.C. § 5000A; (4) Health Benefit Exchanges under the ACA, 42 U.S.C. § 18031; and (5) Medicaid, 42 C.F.R. § 447 *et seq.* (Compl. ¶¶ 62, 69, 75, 79, 84.)

6

In Plaintiff's Complaint, Plaintiff claims that Congress, through EMTALA, intended to occupy the entire field, thus leaving no room for the Charity Care Condition. (*See* Compl. ¶¶ 65, 66.) However, in Plaintiff's Opposition, Plaintiff does not address the issue of field preemption. (*See* Opp'n 19–21.) Instead, Plaintiff takes issue with Defendants' characterization that the EMTALA claim is partially based on field preemption. (*Id.* at 19.) However, viewing the Complaint in the light most favorable to Plaintiff, the Court will construe the EMTALA claim as partially based on field preemption, despite Plaintiff's failure to address the issue in its Opposition.

Field preemption occurs when states are precluded from regulating conduct in a field that Congress "has determined must be regulated by its exclusive governance." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013). Field preemption can be inferred from a regulation that is "so pervasive . . . that Congress left no room for the [s]tates to supplement it or where there is a federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* at 1022–23 (internal quotation marks omitted).

As an initial matter, Plaintiff does not identify the field that Congress intended to occupy through EMTALA. Thus, the Court is left to speculate what field Plaintiff believes Congress intended to occupy through EMTALA. *See Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007) (identifying a field in which Congress intended to occupy for the purposes of field preemption).

Additionally, EMTALA is explicit regarding preemption. EMTALA contains a statement indicating a general congressional intent not to preempt state law: "[t]he provisions of this section do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section." 42 U.S.C. § 1395dd(f). The text of the statute is unambiguous that EMTALA would preempt state law only if the state requirement directly conflicted with the requirements of EMTALA. Accordingly, "[w]hen Congress has considered the issue of preemption and has included . . . a provision explicitly addressing that issue . . .

there is no need to infer congressional intent to preempt state laws from the substantive provisions of the legislation." *Draper v. Chiapuzio*, 9 F.3d 1391, 1393 (9th Cir. 1993) (per curiam) (quoting *Cipollone v. Liggett Grp. Inc.*, 505 U.S. 504, 517 (1992)). This leaves open only the possibility for conflict preemption as it relates to EMTALA.

As such, Plaintiff's claim for field preemption pursuant to EMTALA is dismissed without leave to amend.

### 2. CONFLICT PREEMPTION

Plaintiff alleges that five federal laws preempt the Charity Care Condition: (1) EMTALA, 42 U.S.C. § 1395dd; (2) Medicaid Expansion, 42 U.S.C. § 1396a(74); (3) the individual mandate of the Affordable Care Act, 26 U.S.C. § 5000A; (4) Health Benefit Exchanges under the Affordable Care Act, 42 U.S.C. § 18031; and (5) Medicaid, 42 C.F.R. § 447 *et seq.* (Compl. ¶¶ 62, 69, 75, 79, 84.)

Conflict preemption occurs when state law conflicts with a federal statute. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). Conflict preemption has two forms: impossibility and obstacle preemption. *Id.* at 372. Impossibility preemption occurs where "it is impossible for a private party to comply with both state and federal law." *Id.* Obstacle preemption occurs "where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* at 373 (internal quotation marks and alterations omitted).

Beyond Plaintiff's conclusory allegations, Plaintiff does not allege any facts regarding how the Charity Care Condition makes it impossible for Plaintiff to comply with the federal laws or stands as an obstacle to the full purposes and objectives of Congress. In fact, as it relates to EMTALA, Plaintiff freely admits that "[d]uring all relevant times herein, [Plaintiff] has complied with its obligations under 42 U.S.C. [§] 1395dd," and Plaintiff makes no allegation that the Charity Care Condition obstructs the accomplishment and execution of EMTALA. (*See* Compl. ¶ 25.)

Additionally, as it relates to Medicaid and Medicaid Expansion, Plaintiff does not allege conflict preemption. Instead, Plaintiff's allegation is that the Charity Care Condition makes it less lucrative to comply with Medicaid law, specifically that the Charity Care Condition penalizes Plaintiff and that "the incentives created by Congress become pyrrhic at best." (*Id.* ¶ 73.) Like EMTALA, Plaintiff is able to comply with its Medicaid obligations and meet the Charity Care Condition; it just may not be as profitable as it once was. (*See id.* ¶ 90.) Moreover, Plaintiff makes no claim that the Charity Care Condition hindered Congress's intent behind Medicaid and Medicaid Expansion or that the Charity Care Condition negatively affected Congress's ability to subsidize medical services to needy individuals. *See Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1382 (2015) ("Medicaid is a federal program that subsidizes the States' provision of medical services . . . .").

The crux of Plaintiff's claim is that there are more individuals who have medical insurance and less individuals who need charity care because of the Affordable Care Act, and as a result, Plaintiff cannot meet the minimum amount of charity care as set forth in the Charity Care Condition without having to drive the streets "looking for those most ill among the homeless population." (Opp'n 2, 21.) Even if there are more people who have medical insurance as a result of the Affordable Care Act, this does not explain why Plaintiff cannot comply with the other component of the Charity Care Condition, specifically, providing financial support to nonprofit organizations in Plaintiff's area that do provide charity care. Simply because it is more difficult for Plaintiff to comply with the Charity Care Condition does not mean that the Charity Care Condition has been preempted.

Moreover, Plaintiff has failed to identify how the Charity Care Condition stands as an obstacle to the full purposes and objectives of Congress when it enacted the ACA. Although the Court appreciates the history lesson of the different federal statutes and the purpose of charity care, neither the Opposition nor the Complaint explains how the Charity Care Condition contravenes Congress's objective or intent.

Plaintiff's Complaint actually alleges that the Charity Care Condition has *not* affected Congress' goal in enacting the ACA, namely to decrease the number of uninsured individuals. (*See* Compl. ¶ 57.) Defendants are correct that Plaintiff has it backwards, "[a]lthough [Plaintiff] alleges that its compliance with federal law makes it more difficult (or most costly) to meet its charity care condition, it does not . . . allege that the charity care condition has any impact whatsoever on its ability to comply with federal law." (Mot. 20.)

## V. LEAVE TO AMEND

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Plaintiff does not request leave to amend; nor does the Court find that leave to amend would be proper. Amendment would be futile as it could not possibly cure the deficiencies in Plaintiff's Complaint. No amendment could change the fact, as alleged in Plaintiff's Complaint, that Plaintiff continues to meet both its obligations under the federal laws discussed above and the Charity Care Condition, and that the Charity Care Condition does not stand as an obstacle to the federal laws previously discussed. Accordingly, the Motion to Dismiss is granted without leave to amend.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion to Dismiss without leave to amend as amendment would be futile. (ECF No. 24.) The Clerk of the Court shall close the case.

February 6, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**